# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHARLES S. METCALF, JR.** | : | **CIVIL ACTION NO. 2:15-cv-2548** |
| **B.O.P. #43753-074** | | **SECTION P** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BECKY CLAY ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus [doc. 1] pursuant to 28 U.S.C § 2241, filed by Charles S. Metcalf, Jr. ("petitioner"). The petitioner is a prisoner in the custody of the Bureau of Prisons ("BOP"). He is currently incarcerated at the Federal Correctional Institute at Oakdale, Louisiana ("FCI-Oakdale"). Becky Clay, warden of FCI-Oakdale, has responded in opposition to the application.[1] Doc. 14.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **GRANTED**. It is also **RECOMMENDED** that the Request for Discovery contained in the petitioner's response [doc. 15] be **DENIED**.

---

[1] The petitioner also named Charles Samuels as a respondent. Respondent Clay states that Samuels is the former director of the BOP and is now retired. Doc. 14, att. 1, p. 5 n. 1. The proper respondent in a § 2241 petition is generally the warden of the facility where the petitioner is currently incarcerated, and not "some other remote supervisory official." *Rumsfeld v. Padilla*, 124 S.Ct. 2711, 2718 (2004). Therefore, as respondent Clay asserts, she is the only proper respondent to this action.

# I.
## BACKGROUND

The instant petition relates to disciplinary proceedings against the petitioner stemming from an incident on January 13, 2015. Doc. 1, att. 1, pp. 2–3. According to the incident report, an officer was conducting random cell searches and discovered an altered soda can, "meant for hiding contraband," in the petitioner's locker. Doc. 14, att. 2, p. 2. The petitioner admitted that the contents of the locker were his. *Id.* The officer then noticed that the mirror in the petitioner's cell had been tampered with. *Id.* Upon removing it, he discovered that a brick had been taken out and that the resulting hole "led to the pipe chase behind the wall which is a secured area for authorized staff only." *Id.* The incident was referred to the Unit Discipline Committee and then to the Disciplinary Hearing Officer ("DHO"). *Id.*

The DHO conducted a hearing ("first hearing") on January 27, 2015. Doc. 14, att. 3. There the petitioner admitted that he knew about the hole but never accessed it. *Id.* at 2. He also requested two witnesses who would testify that he did not create the hole. *Id.* at 3. This request was denied, as "[that] issue was not in contention. At issue is, was the hole a breach of security and did [petitioner] have control over the hole." *Id.* The DHO then determined, based on the petitioner's control of the hidden hole and possession of the altered soda can, that he was guilty of "disruptive conduct most like tampering with a security device." *Id.* at 4. Accordingly, the following sanctions were imposed: 1) disallowance of 27 days of good conduct time, 2) disciplinary segregation of three months (suspended pending clear conduct), and 3) a fine of $300 dollars. *Id.* at 4–5.

The petitioner appealed the disciplinary conviction to the BOP's regional director. Doc. 14, att. 4, p. 3. The regional director granted a rehearing, stating that the petitioner would "be afforded all rights as in the original hearing." *Id.* at 4. The regional director then sent a memorandum to the warden, explaining that a rehearing was being granted because the evidence

did not support the conviction and the DHO failed to provide adequate justification for denying the petitioner the opportunity to call witnesses. *Id.* at 5–6. He also stated that the conduct appeared to support a charge of destruction of government property. *Id.* at 5.

The matter was reheard on March 19, 2015 ("second hearing"). Doc. 14, att. 5. The report from that hearing indicates that the petitioner appeared and waived his right to call any witnesses. *Id.* at 3. The DHO considered photographs and the petitioner's testimony and once again determined that the petitioner was guilty of "disruptive conduct most like tampering with a security device." *Id.* at 3–4. Accordingly, he imposed the same sanctions from the first hearing. *Id.* at 4. The petitioner again sought review from the regional director. Doc. 14, att. 4, pp. 7–8. The regional director once again ordered a new hearing and noted in a memorandum to the warden that the evidence did not support the charged offense, but once again stated that this conduct appeared to support a charge of destruction of government property. *Id.* at 9–10.

The DHO held another hearing ("third hearing") on April 24, 2015. Doc. 14, att. 6. The charge was amended to destruction of government property over one hundred dollars. *Id.* at 3. The petitioner appeared, waived his right to call witnesses, and stated once again that he had been assigned to that cell for two years and that he knew about the hole but had never accessed it. *Id.* at 2–3. At the conclusion of the hearing, the DHO determined based on the evidence that the petitioner had committed the charged offense. *Id.* at 4. Accordingly, he imposed the same sanctions from the first hearing. *Id.*

The petitioner appealed the outcome of the third hearing to the regional director. Doc. 14, att. 4, pp. 11–12. The regional director determined that his claims were meritless. *Id.* at 13–14. The petitioner then sought review from the BOP's central office on July 8, 2015. *Id.* at 2. However, there is no record that this appeal was ever answered. *Id.* (noting no response as of May 10, 2016).

The instant petition was filed on October 20, 2015. Doc. 1. Here the petitioner challenges the outcome of his DHO hearings, alleging violations of his right to due process and equal protection. Doc. 1, att. 1.

## II.
## LAW & ANALYSIS

### A. *Due Process*

A federal prisoner may challenge the execution of his sentence, including loss of credit towards his sentence, through 28 U.S.C. § 2241. *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992); *see, e.g.*, *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). In prison disciplinary proceedings where loss of good time is threatened, inmates are not afforded the "full panoply of rights" applicable to a criminal prosecution. *Wolff v. McDonnell*, 94 S.Ct. 2963, 2975 (1974). However, they still have certain minimal guarantees through the Due Process Clause. These include the right to notice, the right to call witnesses and present evidence, subject to penal interests, and a written statement by the factfinders outlining the basis of their decision. *Id.* at 2979–80.

Satisfaction of *Wolff*'s first guarantee requires that a prisoner be given written notice of the charges against him at least twenty-four hours before the hearing. *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009). "The sufficiency of notice hinges upon whether it allows the prisoner to 'marshal the facts' to prepare a defense." *Nelms v. Young*, 2009 WL 1160682, *6 (W.D. La. Apr. 29, 2009) (quoting *Wolff*, 94 S.Ct. at 2978). Although *Wolff* requires notice of the charge as well as the factual basis, the notice is deemed sufficient where the modified and original charges rely on the same factual allegations. *Nelms*, 2009 WL 1160682 at *9 (citing *Northern v. Hanks*, 326 F.3d 909, 910–11 (7th Cir. 2003)) (additional citations omitted).

As the respondent notes, the record shows that the petitioner received a notice form for the January 27, 2015 hearing on January 15, 2015. Doc. 14, att. 7, p. 2. He received written notice of the second and third hearings through the regional director's responses. The respondent does not contend that any other notice was sent to the petitioner and instead argues that the regional director's responses were sufficient.[2] *See* doc. 14, att. 1, p. 13.

The report from each hearing indicates that the petitioner was in possession of the incident report from which the charges derived. Doc. 14, atts. 3, 5, 6. However, the petitioner alleges that he was not aware of the "completly [*sic*] new charge" he was facing in the third hearing, as he "had been told on multiple occasions reflected in the DHO hearing reports that he was not being charged with creating the hole . . . ." Doc. 15, p. 2. As the report from the third hearing reveals, conviction of the amended charge rested upon the finding "that inside inmate Metcalf's assigned cell was a hidden hole behind the mirror breaching a security feature of the institution **that inmate Metcalf created**."[3] Doc. 14, att. 6, p. 4 (emphasis added). Thus the amended charge did not rely on the same factual basis as the original.

The petitioner states that, had he known of the amendment, he would have renewed his request for witnesses. Doc. 15, p. 2–3. He contends that the witnesses he desired to call would have testified that he did not create the hole behind the mirror. *Id.*; *see* doc. 14, att. 3, p. 3. Accordingly, his lack of notice as to the amendment impacted his ability to prepare a defense and petitioner is thus entitled to habeas relief.

---

[2] The respondent also intimates that no notice was required for the rehearing, as the petitioner's presence there was not required. Doc. 14, att. 1, p. 13. However, the rehearings still resulted in sanctions to the petitioner's good time credit. We therefore have no basis for holding them to be exempt from *Wolff*'s due process guarantees.

[3] *Cf.* Doc. 14, att. 3, pp. 3–4 (noting, under "Charges Raised," that "there is no evidence indicating inmate Metcalf created the hole. . . . What is being purposed [*sic*] is more like inmate Metcalf was in possession of the hole, because it was in his area . . . of responsibility.")

Having found that the disciplinary proceedings did not satisfy *Wolff*'s first due process guarantee, we will not consider the petitioner's remaining due process allegations.

### B. *Equal Protection*

The petitioner also contends that his right to equal protection was violated because his cellmate was not subject to any charges for the hole behind the mirror. The Equal Protection Clause requires that people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 105 S.Ct. 3249, 3254 (1985). To succeed on an equal protection claim, a plaintiff must show that he suffered "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 862 (5th Cir. 2004) (internal citations omitted).

Here the petitioner provides no evidence for the notion that his cellmate was similarly situated. Though they shared a living space, there is no admission from the cellmate that he knew about the hole or that he was in possession of other contraband, like the petitioner was. Accordingly, the petitioner's assertion that his cellmate was not charged fails to show a violation of his right to equal protection.

### C. *Request for Discovery*

Lastly, the petitioner notes in his response that, when inmates were moved in December 2015, he discovered a hole behind the mirror in his new cell. Doc. 15, p. 4. The petitioner states that he brought this hole to the attention of a staff member. *Id.* He contends that another staff member told the petitioner he would request that it be repaired and assured the petitioner that he would not be disciplined for it. *Id.* The petitioner states that he requested a record of this note in preparing his petition, but that none could be located. *Id.* Accordingly, he requests discovery of all investigative materials pertaining to his current cell. *Id.* He also requests disciplinary records of

another inmate, whom he contends was under investigation for creating holes. *Id.* at 3, 4. He asserts that this inmate's records will reveal exculpatory information relating to the petitioner's disciplinary proceedings. *Id.* at 4.

The issue before us is whether the petitioner's constitutional rights to due process and equal protection were violated by the disciplinary proceedings stemming from the January 13, 2015 incident report. The petitioner fails to show adequate relevance of the areas in which he seeks discovery to the instant application, as we are not considering the remaining due process allegations after finding deficient notice and the instant application does not contain any allegations on disciplinary proceedings relating to the hole discovered in December 2015. *See* doc. 1, att. 1. Accordingly, the Request for Discovery [doc. 15] should be denied.

### III.
#### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **GRANTED** and that this matter be remanded to the prison, with the disciplinary adjudication and sanctions following the third hearing vacated and for rehearing with all rights to which the petitioner was entitled at the first hearing on this matter. It is also recommended that the Request for Discovery contained in the petitioner's response be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 6 September 2016.

_____

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE